UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Devon Avery, Blondel Garner, Brian Hayes, Daniel Moon, and Timothy Ryan, on behalf of themselves and a class of similarly situated persons, | No. |
| Plaintiffs, | COMPLAINT—CLASS ACTION. |
| v. | JURY DEMAND |
| T-Mobile USA, Inc. | |
| Defendant. | |

Plaintiffs Devon Avery, Blondel Garner, Brian Hayes, Daniel Moon, and Timothy Ryan, individually and on behalf of all others similarly situated ("Plaintiffs"), bring this action against Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclasses, as defined below. Plaintiffs make the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of

COMPLAINT - 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have a grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2.      Washington based cellular provider T-Mobile markets itself as a sophisticated, reliable network provider that sets itself apart by its "100% customer commitment."[2] T-Mobile represents that "[a]t T-Mobile, privacy and security is of utmost importance," and that the company "take[s] our customer and prospective customer privacy VERY seriously."[3]

3.      Despite this representation, on August 15, 2021, Vice Media broke news that an anonymous seller was auctioning "a mountain of personal data" from T-Mobile servers on an underground forum.[4] "The data includes social security numbers, phone numbers, names, physical addresses, unique IMEI numbers, and driver licenses information [downloaded locally from T-Mobile servers], the seller said."[5]

4.      T-Mobile subsequently confirmed that "a subset of T-Mobile data had been accesed by unauthorized individuals" and that "the data stolen from our systems did include some personal information."[6]

---

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, S.C. Lawyer (May 2014).
[2] *Un-Carrier History*, T-MOBILE, https://www.t-mobile.com/our-story/un-carrier-history (last visited Aug. 19, 2021).
[3] John Legere, *A Letter from CEO John Legere on Experian Data Breach*, T-MOBILE (Sept. 30, 2015), https://www.t-mobile.com/news/blog/experian-data-breach (last visited Aug. 19, 2021).
[4] Joseph Cox, *T-Mobile Investigating Claims of Massive Customer Data Breach*, MOTHERBOARD: TECH BY VICE (Aug. 15, 2021), https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million (last visited Aug. 19, 2021).
[5] *Id.*
[6] *T-Mobile Shares Additional Information Regarding Ongoing Cyberattack Investigation*, T-MOBILE (Aug. 17, 2021), https://www.t-mobile.com/news/network/additional-information-regarding-2021-cyberattack-investigation (last visited Aug. 19, 2021).

COMPLAINT - 2

5.      As a result of the Data Breach, through which their Personally Identifiable Information ("PII") was compromised, disclosed, and obtained by unauthorized third parties, Plaintiffs and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiffs and the other Class Members will incur ongoing out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

6.      By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly-situated individuals whose Private Information was accessed during the Data Breach.

## II.    JURISDICTION, VENUE, AND CHOICE OF LAW

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than T-Mobile, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

8.      The Court has personal jurisdiction over this action because T-Mobile maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigatioin being brought in this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because T-Mobile's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from

COMPLAINT - 3

this District.

### III.    PARTIES

**A.    Plaintiff Devon Avery**

10.    Plaintiff Devon Avery is a citizen of and is domiciled in the state of Washington.

11.    Plaintiff Avery is a customer of T-Mobile.

12.    Plaintiff Avery provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff Avery's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

13.    Plaintiff Avery would not have entrusted his PII to T-Mobile had he known that T-Mobile failed to maintain adequate data security.

14.    On August 19, 2021, in response to a text message Plaintiff Avery received from T-Mobile alerting him and news reports regarding the Data Breach, Plaintiff Avery contacted T-Mobile. Plaintiff Avery was told that his information was indeed compromised and Plaintiff Avery should take steps to prevent identity theft and other adverse financial consequences.

15.    Thereafter, the T-Mobile application that Plaintiff Avery uses for information related to his account provided the following notification to Plaintiff Avery:



**Cybersecurity incident**

T-Mobile has determined that unauthorized access to some of your personal data has occurred. We take the protection of our customers seriously. We are taking actions to protect your T-Mobile account and we recommend that you take action to protect your credit.

Take action ›

COMPLAINT - 4

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

16.     Plaintiff Avery subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

17.     As a result of the Data Breach, Plaintiff Avery has suffered emotional distress as a result of the release of his PII, which he expected T-Mobile to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result of the Data Breach, Plaintiff Avery anticipates spending considerable time and money to contain the impact of the Data Breach.

**B.     Plaintiff Blondel Garner**

18.     Plaintiff Blondel Garner is a citizen of and is domiciled in the state of Tennessee.

19.     Plaintiff Garner is a customer of T-Mobile.

20.     Plaintiff Garner provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff Garner's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

21.     Plaintiff Garner would not have entrusted her PII to T-Mobile had she known that T-Mobile failed to maintain adequate data security.

22.     On or about August 15, 2021, Plaintiff Garner learned through news reports of the Data Breach.

23.     She subsequently received a text message notice from T-Mobile, informing her that her PII had been compromised in the Data Breach.

24.     Plaintiff Garner subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach and signing up for the McAfee ID Theft Protection Service offered by T-Mobile.

25.     As a result of the Data Breach, Plaintiff Garner has suffered emotional distress as

COMPLAINT - 5

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

a result of the release of her PII, which she expected T-Mobile to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII. As a result of the Data Breach, Plaintiff Garner anticipates spending considerable time and money to contain the impact of the Data Breach.

**C.     Plaintiff Brian Hayes**

26.     Plaintiff Brian Douglas Hayes is a citizen of and is domiciled in the state of Minnesota.

27.     Plaintiff Hayes is a customer of T-Mobile.

28.     Plaintiff Hayes provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff Hayes's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

29.     Plaintiff Hayes would not have entrusted his PII to T-Mobile had he known that T-Mobile failed to maintain adequate data security.

30.     On August 19, 2021, T-Mobile notified Plaintiff Hayes that his PII was compromised and Plaintiff Hayes should take steps to prevent identity theft and other adverse financial consequences.

31.     Thereafter, the T-Mobile application that Plaintiff Hayes uses for information related to his account provided the following notification to Plaintiff Hayes:



COMPLAINT - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

32.     Plaintiff Hayes subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

33.     As a result of the Data Breach, Plaintiff Hayes has suffered emotional distress as a result of the release of his PII, which he expected T-Mobile to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result of the Data Breach, Plaintiff Hayes anticipates spending considerable time and money to contain the impact of the Data Breach.

**D.      Plaintiff Daniel Moon**

34.     Plaintiff Daniel Moon is a citizen of and is domiciled in the state of California.

35.     Plaintiff Moon is a customer of T-Mobile.

36.     Plaintiff Moon provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff Moon's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

37.     Plaintiff Moon would not have entrusted his PII to T-Mobile had he known that T-Mobile failed to maintain adequate data security.

38.     On August 19, 2021, in response to news reports regarding the Data Breach, Plaintiff Moon contacted T-Mobile, and was sent a link to a web page that described the data breach.

39.     Thereafter, the T-Mobile application that Plaintiff Moon uses for information related to his account provided the following notification to Plaintiff Moon:

COMPLAINT - 7

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

40.     Plaintiff Moon subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

41.     As a result of the Data Breach, Plaintiff Moon has suffered emotional distress as a result of the release of his PII, which he expected T-Mobile to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result of the Data Breach, Plaintiff Moon anticipates spending considerable time and money to contain the impact of the Data Breach.

COMPLAINT - 8

E.      **Plaintiff Timothy Ryan**

42.      Plaintiff Timothy Ryan is a citizen of and is domiciled in the state of Washington.

43.      Plaintiff Ryan is a customer of T-Mobile.

44.      Plaintiff Ryan provided confidential and sensitive PII to T-Mobile, as requested and required by T-Mobile for the provision of its services. T-Mobile obtained and continues to maintain Plaintiff Ryan's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

45.      Plaintiff Ryan would not have entrusted his PII to T-Mobile had he known that T-Mobile failed to maintain adequate data security.

46.      On August 19, 2021, T-Mobile notified Plaintiff Ryan that his PII was compromised and Plaintiff Ryan should take steps to prevent identity theft and other adverse financial consequences.

47.      Thereafter, the T-Mobile application that Plaintiff Ryan uses for information related to his account provided the following notification to Plaintiff Ryan:



48.      Plaintiff Ryan subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, and reviewing his financial accounts for fraud or suspicious activity.

COMPLAINT - 9

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

He now plans to spend several hours a month checking account statements for irregularities.

49.    As a result of the Data Breach, Plaintiff Ryan has suffered emotional distress as a result of the release of his PII, which he expected T-Mobile to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his PII. As a result of the Data Breach, Plaintiff Ryan anticipates spending considerable time and money to contain the impact of the Data Breach.

## F.    Defendant T-Mobile

50.    Defendant T-Mobile USA, Inc. ("T-Mobile") is a Delaware corporation with its principal place of business in Bellevue, Washington. T-Mobile is a wireless network operator and the second largest wireless carrier in the United States. It provides wireless voice and data services for approximately 105 million subscribers.

51.    In the course of its business, T-Mobile collects names, phone numbers, Social Security numbers, physical addresses, drivers license information, and other information from its customers and prospective customers.

## IV.    FACTUAL BACKGROUND

## A.    T-Mobile Failed to Adequately Protect Customer Data, Resulting in the Data Breach

52.    Upon information and belief, on or about August 15, 2021, an anonymous individual posted for sale a collection of data containing 30 million social security numbers and driver licenses, pulled from T-Mobile servers.[7] The seller claimed to have additional data related to more than 100 million people—all T-Mobile customers.[8]

53.    After learning of the breach through online reports of the attempted sale of personal data belonging to its customers, T-Mobile investigated further and discovered that "a subset of T-Mobile data had been accessed by unauthorized individuals," and that the stolen data included full names, dates of birth, Social Security numbers, and driver's license information of

---

[7] Cox, *supra* note 4.
[8] *Id.*

COMPLAINT - 10

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

current and former customers (the "Data Breach").[9] It admits that the cyberattack accessed the personal information of at least "7.8 million current subscribers, as well as records of 40 million people who previously applied for credit."[10]

54.    Five days after news of the Data Breach broke, T-Mobile announced that:

Our investigation is ongoing and will continue for some time, but at this point, we are confident that we have closed off the access and egress points the bad actor used in the attack. Below is what we know to date.

- We previously reported information from approximately 7.8 million current T-Mobile postpaid customer accounts that included first and last names, date of birth, SSN, and driver's license/ID information was compromised. We have now also determined that phone numbers, as well as IMEI and IMSI information, the typical identifier numbers associated with a mobile phone, were also compromised. Additionally, we have since identified another 5.3 million current postpaid customer accounts that had one or more associated customer names, addresses, date of births, phone numbers, IMEIs and IMSIs illegally accessed. These additional accounts did not have any SSNs or driver's license/ID information compromised.

- We also previously reported that data files with information from about 40 million former or prospective T-Mobile customers, including first and last names, date of birth, SSN, and driver's license/ID information, were compromised. We have since identified an additional 667,000 accounts of former T- Mobile customers that were accessed with customer names, phone numbers, addresses and dates of birth compromised. These additional accounts did not have any SSNs or driver's license/ID information compromised.

- Separately, we have also identified further stolen data files including phone numbers, IMEI, and IMSI numbers. That data included no personally identifiable information.

- We continue to have no indication that the data contained in any of the stolen files included any customer financial information, credit card information, debit or other payment information.

---

[9] *T-Mobile Shares Additional Information Regarding Ongoing Cyberattack Investigation*, *supra* note 6.

[10] Hamza Shaban, *T-Mobile says hackers stole data of more than 40 million people*, THE WASHINGTON POST (Aug. 18, 2021), https://www.washingtonpost.com/business/2021/08/18/t-mobile-data-breach-hackers/ (last visited Aug. 19, 2021).

COMPLAINT - 11

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

- As we previously reported, approximately 850,000 active T-Mobile prepaid customer names, phone numbers and account PINs were exposed. We have proactively reset ALL of the PINs on these accounts. Similar information from additional inactive prepaid accounts was also accessed. In addition, up to 52,000 names related to current Metro by T-Mobile accounts may have been included. None of these data sets included any personally identifiable information. Further, none of the T-Mobile files stolen related to former Sprint prepaid or Boost customers.[11]

55.    The cybercriminal "pierce[d] T-Mobile's defenses after discovering in July an unprotected router exposed on the internet. He said he had been scanning T-Mobile's known internet addresses for weak spots using a simple tool available to the public."[12]

56.    This is not T-Mobile's first experience with a data breach—despite collecting private information from customers in the ordinary course of business, this marks the fifth breach for T-Mobile in the past four years. In August 2018, sensitive information for over 2 million T-Mobile customers was exposed.[13] In November 2019, approximately 1 million T-Mobile users' names, addresses, phone numbers, account numbers, rate plans, and customer proprietary network information was accessed by hackers.[14] Less than six months later, in March 2020, an unknown number of customers' names, addresses, phone numbers, account numbers, rate plans

---

[11] *T-Mobile Shares Updated Information Regarding Ongoing Investigation into Cyberattack*, T-MOBILE (Aug. 20, 2021), https://www.t-mobile.com/news/network/additional-information-regarding-2021-cyberattack-investigation (last visited Aug. 20, 2021).

[12] Drew FitzGerald & Robert McMillan, *T-Mobile Hacker Who Stole Data on 50 Million Customers: 'Their Security is Awful'*, WALL ST. J. (Aug. 26, 2021), https://www.wsj.com/articles/t-mobile-hacker-who-stole-data-on-50-million-customers-their-security-is-awful-11629985105?mod=hp_lead_pos12 (last visited Aug. 26, 2021).

[13] Alicia Hope, *Second Data Breach in 2020 for T-Mobile Exposed Customer and Call-Related Information of 200,000 subscribers*, CPO MAGAZINE (Jan. 11, 2021), https://www.cpomagazine.com/cyber-security/second-data-breach-in-2020-for-t-mobile-exposed-customer-and-call-related-information-of-200000-subscribers/ (last visited Aug. 19, 2021).

[14] Dewin Coldewey, *More than 1 million T-Mobile customers exposed by breach*, TECHCRUNCH (Nov. 22, 2019), https://techcrunch.com/2019/11/22/more-than-1-million-t-mobile-customers-exposed-by-breach/ (last visited Aug. 19, 2021).

COMPLAINT - 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and features, and billing information was accessed by hackers.[15] Later that year, the private

information of approximately 200,000 customers' data was exposed in yet another breach.[16]

57.    After each of these breaches, T-Mobile reiterated that it takes the security of

customer information "seriously" and reassured customers that it has "a number of safeguards in

place to protect customer information from unauthorized access,"[17] going so far as to claim that

it safeguards customer information with the "utmost concern."[18] Further, T-Mobile's Privacy

Notice reiterates the company's purported commitment to securing customers' data:

> We use administrative, technical, contractual, and physical safeguards designed to
> protect your data while it is under our control. For example, when you contact us
> by phone or visit us in our stores, we have procedures in place to make sure that
> only the primary account holder or authorized users have access.[19]

58.    The T-Mobile Privacy Center website also prominently reiterates these

representations[20]:



---

[15] *T-Mobile's Data Breach Exposes Customer's Data and Financial Information*, Security Magazine (Mar. 6, 2020), https://www.securitymagazine.com/articles/91856-t-mobiles-data-breach-exposes-customers-data-and-financial-information (last visited Aug. 19, 2021).

[16] Hope, *supra* note 13.

[17] *See, e.g.*, Letter to Customers from T-Mobile, https://www.t-mobile.com/customers/6305378822 (last visited Aug. 19, 2021); *Notice of Security Incident*, T-Mobile, https://www.t-mobile.com/responsibility/consumer-info/security-incident (last visited Aug. 19, 2021).

[18] *Notice of Data Breach: Keeping you safe from cybersecurity threats*, T-Mobile (Aug. 19, 2021), https://www.t-mobile.com/brand/data-breach-2021 (last visited Aug. 20, 2021).

[19] *Privacy Notice*, T-Mobile (May 5, 2021), https://www.t-mobile.com/privacy-center/our-practices/privacy-policy (last visited Aug. 20, 2021).

[20] *Privacy Center*, T-Mobile, https://www.t-mobile.com/privacy-center (last visited Aug. 20, 2021).

COMPLAINT - 13

Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



59.      Despite these representations, T-Mobile has continued to experience data breaches with increasing regularity and severity; yet the recent breach at issue in this litigation was described by a security and risk analyst at Forrester Research as "the worst breach they've had so far."[21]

60.      T-Mobile's failure to follow standard data protection procedures resulted in the Data Breach. Glenn Gerstell, former general counsel for the National Security Agency, noted that the fact that many of the records reported stolen were from prospective clients or former customers did "not sound like good data management practices."[22]

61.      Even the cybercriminal reported to the Wall Street Journal: "Their security is awful."[23] The cybercriminal disclosed that he "managed to pierce T-Mobile's defenses after discovering in July an unprotected router exposed on the internet. He said he had been scanning T-Mobile's known internet addresses for weak spots using a simple tool available to the

---

[21] Chris Velazco, *Here's what to do if you think you're affected by T-Mobile's big data breach*, THE WASHINGTON POST (Aug. 19, 2021), https://www.washingtonpost.com/technology/2021/08/19/t-mobile-data-breach-what-to-do/ (last visited Aug. 19, 2021) (quoting Allie Mellen, Forrester Research).

[22] FitzGerald & McMillan, *supra* note 12.

[23] *Id.*

COMPLAINT - 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

public."[24]

62.     T-Mobile was familiar with its obligations—created by contract, industry standards, common law, and representations to its customers—to protect customer information. Plaintiffs and Class Members provided their Private Information to T-Mobile with the reasonable expectation that T-Mobile would comply with its obligations to keep such information confidential and secure.

63.     T-Mobile's CEO, Mike Silvert, admits that "[w]e didn't live up to the expectations we have for ourselves to protect our customers."[25]

64.     T-Mobile failed to comply with these obligations, resulting in the Data Breach. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records.

**B.      The Data Breach Puts Consumers at Increased Risk of Fraud and Identity Theft**

65.     An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

66.     Moreover, a security and identity theft expert for Credit Sesame has compared a person's Social Security number—which was compromised in the Data Breach—to a person's "secret sauce," which is as good as DNA to hackers.[26]

67.     Identity thieves can also use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing

---

[24] *Id.*

[25] Dave Sebastian & Drew FitzGerald, *T-Mobile CEO Apologizes for Data Security-Breach*, WALL ST. J. (Aug. 27, 2021), https://www.wsj.com/articles/t-mobile-ceo-apologizes-for-data-security-breach-11630071045?mod=hp_lista_pos1 (last visited Aug. 27, 2021).

[26] Cameron Huddleston, *How to Protect Your Kids from the Anthem Data Breach,* Kiplinger, (Feb. 10, 2015), http://www.kiplinger.com/article/credit/T048-C011-S001-how-to-protect-your-kids-from-the-anthem-data-brea.html#djkDlop4XkCzI4LO.99 (last visited Aug. 20, 2021).

COMPLAINT - 15

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

accounts of the victim. Despite T-Mobile's repeated assurance that it has "no indication that personal financial or payment information, credit or debit card information, account numbers, or account passwords were accessed" in the Data Breach,[27] Plaintiff's finances are now at risk due to the Data Breach.

68.     Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[28] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 75% of identity theft victims reported emotional distress.[29]

69.     Plaintiffs are now in the position of having to take steps to mitigate the damages caused by the Data Breach. However, even if Plaintiffs and Class Members take all possible steps, they will remain at risk: when consumers and borrowers have their Social Security numbers stolen through a data breach, they have to wait until they become victims of Social Security number misuse before they can obtain a new one. Even then, the Social Security Administration has warned that a new Social Security number may not solve all problems, will not guarantee a fresh start, and can create new problems. For example, a new Social Security number has a completely blank credit history, making it difficult to get credit for years unless it is linked to the compromised number.[30]

70.     Once use of compromised non-financial PII is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term

---

[27] *Notice of Data Breach*, *supra* note 18.

[28] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited Aug. 20, 2021).

[29] *Id.*

[30] Huddleston, *supra* note 26.

COMPLAINT - 16

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

consequences from this type of crime.[31]

71.     T-Mobile is aware of these consequences to Plaintiffs and Class Members, as evidenced by its response to the Data Breach, which recommends to customers that they "take proactive steps regularly to protect your data and identity."[32]

72.     T-Mobile failed to protect and safeguard Plaintiffs' and Class Members' private information, in fact failing to adhere to even its most basic obligations. As a result, Plaintiffs and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

## V.     CLASS ACTION ALLEGATIONS

73.     Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.

74.     In addition, the state subclasses are defined as follows:

**California Subclass:** All natural persons in the State of California whose Personally Identifiable Information was compromised as a result of the Data Breach.

**Minnesota Subclass:** All natural persons in the State of Minnesota whose Personally Identifiable Information was compromised as a result of the Data Breach.

**Tennessee Subclass:** All natural persons in the State of California whose Personally Identifiable Information was compromised as a result of the Data Breach.

**Washington Subclass:** All natural persons in the State of Washington whose Personally Identifiable Information was compromised as a result of the Data Breach.

75.     **Numerosity and Ascertainability:** Plaintiffs do not know the exact size of the

---

[31] Identity Theft: The Aftermath 2013, Identity Theft Resource Center, http://www.idtheftcenter.org/images/surveys_studies/Aftermath2013.pdf (last visited Aug. 20, 2021).

[32] *Notice of Data Breach*, *supra* note 18.

COMPLAINT - 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Class or identity of the Class Members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses tens of thousands of individuals dispersed throughout the United States. The number of Class Members is so numerous that joinder of all Class Members is impracticable. The names, addresses, and phone numbers of Class Members are identifiable through documents maintained by Defendant.

76.    **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class Members. These common questions include:

A.    whether Defendant engaged in the conduct alleged herein;

B.    whether Defendant had a legal duty to use reasonable security measures to protect Plaintiff's and Class Members' PII;

C.    whether Defendant timely, accurately, and adequately informed Plaintiffs and Class Members that their PII had been compromised;

D.    whether Defendant breached its legal duty by failing to protect the PII of Plaintiffs and Class Members;

E.    whether Defendant acted reasonably in securing the PII of Plaintiffs and Class Members;

F.    whether Plaintiffs and Class Members are entitled to injunctive relief;

G.    and whether Plaintiffs and Class Members are entitled to damages and equitable relief.

77.    **Typicality:** Plaintiffs' claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and Class Members arise from the same operative facts and are based on the same legal theories.

COMPLAINT - 18

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

78.    **Adequacy:** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiffs and their counsel.

79.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class**

### COUNT ONE — NEGLIGENCE

80.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

81.    T-Mobile owed a duty to Plaintiffs and Class Members, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in an intrusion, to exercise reasonable care in safeguarding their sensitive personal information. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing T-Mobile's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiffs' and Class

COMPLAINT - 19

Members' information was adequately secured from unauthorized access.

82.    T-Mobile's Privacy Notice acknowledged T-Mobile's duty to adequately protect Plaintiffs' and Class Members' PII.

83.    T-Mobile owed a duty to Plaintiffs and Class Members to implement administrative, physical and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiffs' and Class Members' PII.

84.    T-Mobile also had a duty to only maintain PII that was needed to serve customer needs.

85.    T-Mobile owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiffs' and Class Members' PII.

86.    T-Mobile also had independent duties under Plaintiffs' and Class Members' state laws that required T-Mobile to reasonably safeguard Plaintiffs' and Class Members' PII, and promptly notify them about the Data Breach.

87.    T-Mobile had a special relationship with Plaintiffs and Class Members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiffs' and Class Members' willingness to entrust T-Mobile with their PII was predicated on the understanding that T-Mobile would take adequate security precautions. Moreover, T-Mobile was capable of protecting its networks and systems, and the PII it stored on them, from unauthorized access.

88.    T-Mobile breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class Members' PII, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiffs' and Class Members' PII.

89.    But for T-Mobile's breach of its duties, including its duty to use reasonable care

COMPLAINT - 20

to protect and secure Plaintiffs' and Class Members' PII, Plaintiffs' and Class Members' PII would not have been accessed by unauthorized parties.

90.    Plaintiffs and Class Members were foreseeable victims of T-Mobile's inadequate data security practices. T-Mobile knew or should have known that a breach of its data security systems would cause damage to Plaintiffs and Class Members.

91.    It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiffs' and Class Members' PII would result in unauthorized access to T-Mobile's networks, databases, and computers that stored or contained Plaintiffs' and Class Members' PII.

92.    As a result of T-Mobile's negligent failure to prevent the Data Breach, Plaintiffs and Class Members suffered injury, which includes but is not limited to exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of the PII.

93.    The harm to Plaintiffs and Class Members was a proximate, reasonably foreseeable result of T-Mobile's breaches of its aforementioned duties.

94.    Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT TWO — NEGLIGENCE PER SE

95.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

96.    Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, T-Mobile had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

97.    In addition, under state data security statutes, T-Mobile had a duty to implement

COMPLAINT - 21

and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' PII.

98.    T-Mobile breached its duties to Plaintiffs and Class Members, under the Federal Trade Commission Act, 15 U.S.C. § 45, ("FTCA") and the state data security statutes, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

99.    Plaintiffs and Class Members were foreseeable victims of T-Mobile's violations of the FTCA and state data security statutes. T-Mobile knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiffs' and Class Members' PII would cause damage to Plaintiffs and Class Members.

100.    T-Mobile's failure to comply with the applicable laws and regulations constitutes negligence *per se.*

101.    But for T-Mobile's violation of the applicable laws and regulations, Plaintiffs' and Class Members' PII would not have been accessed by unauthorized parties.

102.    As a result of T-Mobile's failure to comply with applicable laws and regulations, Plaintiffs and Class Members suffered injury, which includes but is not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of the PII.

103.    The harm to Plaintiffs and the Class Members was a proximate, reasonably foreseeable result of T-Mobile's breaches of the applicable laws and regulations.

104.    Therefore, Plaintiffs and Class Members are entitled to damages in an amount to

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

be proven at trial.

## COUNT THREE — GROSS NEGLIGENCE

105.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

106.    Plaintiffs and Class Members entrusted T-Mobile with highly-sensitive and inherently personal private data subject to confidentiality laws.

107.    In requiring, obtaining and storing Plaintiffs' and Class Members' PII, T-Mobile owed a duty of reasonable care in safeguarding the PII.

108.    T-Mobile's networks, systems, protocols, policies, procedures and practices, as described above, were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiffs' and Class Members' PII were secured from unauthorized access.

109.    T-Mobile's networks, systems, protocols, policies, procedures and practices, as described above, were not reasonable given the sensitivity of the Plaintiffs' and Class Members' private data and the known vulnerabilities of T-Mobile's systems.

110.    T-Mobile did not comply with state and federal laws and rules concerning the use and safekeeping of this private data.

111.    Upon learning of the Data Breach, T-Mobile should have immediately disclosed the Data Breach to Plaintiffs and Class Members, credit reporting agencies, the Internal Revenue Service, financial institutions and all other third parties with a right to know and the ability to mitigate harm to Plaintiffs and Class Members as a result of the Data Breach.

112.    Despite knowing its networks, systems, protocols, policies, procedures and practices, as described above, were not adequately designed, implemented, maintained, monitored and tested to ensure that Plaintiffs' and Class Members' PII were secured from unauthorized access, T-Mobile ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

113.    T-Mobile's behavior establishes facts evidencing a reckless disregard for Plaintiffs' and Class Members' rights.

COMPLAINT - 23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

114.    T-Mobile, therefore, was grossly negligent.

115.    T-Mobile's negligence also constitutes negligence per se.

116.    The negligence is directly linked to injuries.

117.    As a result of T-Mobile's reckless disregard for Plaintiffs' and Class Members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures and practices were not adequately designed, implemented, maintained, monitored and tested, Plaintiffs and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of the PII.

118.    The harm to Plaintiffs and the Class Members was a proximate, reasonably foreseeable result of T-Mobile's breaches of the applicable laws and regulations.

119.    Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT FOUR — BREACH OF EXPRESS CONTRACTS

120.    Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

121.    Plaintiffs and members of the Class, additionally and alternatively, allege that they entered into valid and enforceable express contracts with T-Mobile.

122.    Under these express contracts, T-Mobile promised and was obligated to: (a) provide services to Plaintiffs and Class Members; and (b) protect Plaintiffs' and the Class Members' PII. In exchange, Plaintiffs and members of the Class agreed to pay money for these

COMPLAINT - 24

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

services.

123.    Both the provision of services, as well as the protection of Plaintiffs' and Class Members' PII, were material aspects of these contracts.

124.    T-Mobile's express representations, including, but not limited to, express representations found in T-Mobile's Privacy Notice, formed an express contract requiring T-Mobile to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' PII.

125.    Alternatively, the express contracts included implied terms requiring T-Mobile to implement data security adequate to safeguard and protect the confidentiality of Plaintiffs' and Class Members' PII, including in accordance with federal, state and local laws, and industry standards.

126.    Consumers value their privacy, the privacy of their dependents, and the ability to keep their PII associated with obtaining services private. To customers such as Plaintiffs and Class Members, services that do not adhere to industry-standard data security protocols to protect PII are fundamentally less useful and less valuable than services that adhere to industry-standard data security. Plaintiffs and Class Members would not have entered into these contracts with T-Mobile without an understanding that their PII would be safeguarded and protected.

127.    A meeting of the minds occurred, as Plaintiffs and members of the Class provided their PII to T-Mobile and paid for the provided services in exchange for, amongst other things, protection of their PII.

128.    T-Mobile materially breached the terms of these express contracts, including but not limited to the terms stated in the relevant Privacy Notice. Specifically, T-Mobile did not comply with federal, state and local laws, or industry standards, or otherwise protect Plaintiffs' and the Class Members' PII, as set forth above. Further, on information and belief, T-Mobile has not yet provided Data Breach notifications to some affected Class Members who may already be victims of identity fraud or theft or are at imminent risk of becoming victims of identity theft or

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

fraud associated with PII that they provided to T-Mobile. These Class Members are as yet unaware of the potential source for the compromise of their PII.

129.    The Data Breach was a reasonably foreseeable consequence of T-Mobile's actions in breach of these contracts.

130.    As a result of T-Mobile's failure to fulfill the data security protections promised in these contracts, Plaintiffs and members of the Class did not receive the full benefit of the bargain, and instead received services that were of a diminished value to that described in the contracts. Plaintiffs and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

131.    Had T-Mobile disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither Plaintiffs, nor Class Members, nor any reasonable person would have purchased services from T-Mobile.

132.    As a result of T-Mobile's breach, Plaintiffs and Class Members suffered actual damages resulting from the theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

133.    As a result of T-Mobile's breach, Plaintiffs and the Class Members have suffered actual damages resulting from their attempt to mitigate the effects of the breach of contract and subsequent Data Breach, including but not limited to, taking steps to protect themselves from the loss of their PII.

134.    Accordingly, Plaintiffs and the other members of the Class have been injured as a result of T-Mobile's breach of contracts and are entitled to damages and/or restitution in an amount to be determined at trial.

## COUNT FIVE — BREACH OF IMPLIED CONTRACTS

135.    Plaintiffs incorporate all foregoing factual allegations as if fully set forth herein.

136.    Plaintiffs and Class Members were required to provide their PII to obtain services from T-Mobile. Plaintiffs and Class Members entrusted their PII to T-Mobile in order to obtain

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

services from them.

137.    By providing their PII, and upon T-Mobile's acceptance of such information, Plaintiffs and Class Members on one hand, and T-Mobile on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby T-Mobile was obligated to take reasonable steps to secure and safeguard that information.

138.    T-Mobile had an implied duty of good faith to ensure that the PII of Plaintiffs and Class Members in its possession was only used in accordance with their contractual obligations.

139.    T-Mobile was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiffs' and Class Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and T-Mobile expressly assented to these terms in its Privacy Notice as alleged above.

140.    Under these implied contracts for data security, T-Mobile was further obligated to provide Plaintiffs and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

141.    Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to T-Mobile, including paying for the services provided by T-Mobile and/or providing the PII required by T-Mobile.

142.    T-Mobile breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class Members' PII, resulting in the Data Breach. T-Mobile unreasonably interfered with the contract benefits owed to Plaintiffs and Class Members.

143.    Further, on information and belief, T-Mobile has not yet provided Data Breach notifications to some affected Class Members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the

COMPLAINT - 27

PII that they provided to T-Mobile. These Class Members are unaware of the potential source for the compromise of their PII.

144.    The Data Breach was a reasonably foreseeable consequence of T-Mobile's actions in breach of these contracts.

145.    As a result of T-Mobile's conduct, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiffs and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

146.    Neither Plaintiffs, nor Class Members, nor any reasonable person would have provided their PII to T-Mobile had T-Mobile disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

147.    As a result of T-Mobile's breach, Plaintiffs and Class Members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

148.    As a result of T-Mobile's breach, Plaintiffs and the Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including but not limited to taking steps to protect themselves from the loss of their PII. As a result, Plaintiffs and the Class Members have suffered actual identity theft and the ability to control their PII.

149.    Accordingly, Plaintiffs and Class Members have been injured as a result of T-Mobile's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT SIX — BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

150.    Plaintiffs reallege and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

COMPLAINT - 28

151.    Plaintiffs and Class Members entered into and/or were the beneficiaries of contracts with Defendant, as alleged above.

152.    These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiffs' and Class Members' PII and to comply with industry standards and federal and state laws and regulations for the security of this information.

153.    Special relationships exist between Defendant and Plaintiffs and Class Members. Defendant entered into special relationships with Plaintiffs and Class Members, who entrusted their confidential PII to Defendant and paid for services with Defendant.

154.    Defendant promised and was obligated to protect the confidentiality of Plaintiffs' and Class Members' PII from disclosure to unauthorized third parties. Defendant breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiffs' and Class Members' PII, which resulted in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiffs and Class Members by failing to implement reasonable and adequate security measures consistent with industry standards to protect and limit access to the PII of Plaintiffs and the Class in Defendant's possession.

155.    Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying Defendant for services and providing them the confidential PII required by the contracts.

156.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members did not receive the full benefit of their bargain—services

COMPLAINT - 29

with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiffs and Class Members have suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class Members paid for, and the services they received without reasonable data privacy.

157.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from the theft of their PII and remain at imminent risk of suffering additional damages in the future.

158.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including but not limited to taking steps to protect themselves from the loss of their PII.

159.    As a direct and proximate cause of Defendant's conduct, Plaintiffs and Class Members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendant from its conduct. Plaintiffs also seeks reasonable attorneys' fees and costs under applicable law.

### COUNT SEVEN — UNJUST ENRICHMENT
### (ALTERNATIVE TO BREACH OF CONTRACT CLAIM)

160.    Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

161.    Plaintiffs and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services received.

162.    Defendant collected, maintained, and stored the PII of Plaintiffs and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiffs and Class Members.

163.    The money that Plaintiffs and Class Members paid to Defendant should have been

COMPLAINT - 30

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

164.   As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiffs and Class Members paid for, and the services they received without reasonable data privacy.

165.   Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiffs and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiffs and Class Members paid for.

166.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiffs and the Class.

## COUNT EIGHT — DECLARATORY JUDGMENT

167.   Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

168.   Plaintiffs and the Class have stated claims against Defendant based on negligence, negligence per se, gross negligence and negligent misrepresentation, and violations of various state and federal statutes.

169.   Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiffs and the Class, as evidenced by the Data Breach.

170.   As a result of the Data Breach, Defendant's system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of

COMPLAINT - 31

Plaintiffs and the Class going forward.

171. An actual controversy has arisen in the wake of the Data Breach regarding Defendant's current obligations to provide reasonable data security measures to protect the PII of Plaintiffs and the Class. Defendant maintains that its security measures were—and still are—reasonably adequate and denies that they previously had or have any obligation to implement better safeguards to protect the PII of Plaintiffs and the Class.

172. Plaintiffs seek a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiffs and the Class to comply with their data security obligations.

**B.    Claims Brought on Behalf of the California Subclass**

**COUNT NINE — VIOLATION OF THE
CALIFORNIA CUSTOMER RECORDS ACT,
CAL. CIV. CODE §§ 1798.80, *ET SEQ.***

173. Plaintiff Moon ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, incorporates all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of California and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

174. "[T]o ensure that Personal Information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

175. T-Mobile is a business that owns, maintains, and licenses "personal information",

COMPLAINT - 32

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

within the meaning of Cal. Civ. Code § 1798.81.5(d)(1), about Plaintiff and California Subclass members.

176.    T-Mobile is registered as a "data broker" in California, which is defined as a "business that knowingly collects and sells to third parties the personal information of a consumer with whom the business does not have a direct relationship." Cal. Civ. Code § 1798.99.80.[33]

177.    Businesses that own or license computerized data that includes personal information, including SSNs, are required to notify California residents when their personal information has been acquired (or is reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82. Among other requirements, the security breach notification must include "the types of Personal Information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82. *Id.*

178.    T-Mobile is a business that owns or licenses computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82(h).

179.    Plaintiff and California Subclass members' Private Information includes "personal information" as covered by Cal. Civ. Code §§ 1798.81.5(d)(1), 1798.82(h).

180.    Because T-Mobile reasonably believed that Plaintiff and California Subclass members' Private Information was acquired by unauthorized persons during the Data Breach, T-Mobile had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

181.    By failing to disclose the Data Breach in a timely and accurate manner, T-Mobile violated Cal. Civ. Code § 1798.82.

182.    As a direct and proximate result of T-Mobile's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiff and California Subclass members suffered damages, as

---

[33] https://oag.ca.gov/data-broker/registration/185724

COMPLAINT - 33

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

described above.

183.   Plaintiff Moon and California Subclass members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

**COUNT TEN — VIOLATION OF THE**
**CALIFORNIA UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***

184.   Plaintiff Moon ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, incorporates all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of California and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

185.   T-Mobile is a "person" as defined by Cal. Bus. & Prof. Code §17201.

186.   T-Mobile violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

187.   T-Mobile's "unfair" and "deceptive" acts and practices include:

A.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and the California Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

B.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

C.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the California Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

D.   Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and the California Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the California Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

F.   Failing to timely and adequately notify Plaintiff and the California Subclass Members of the Data Breach;

COMPLAINT - 34

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

G.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and the California Subclass Members' Private Information; and

H.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the California Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

188.    T-Mobile has engaged in "unlawful" business practices by violating multiple laws, including the CCRA, Cal. Civ. Code §§ 1798.80, *et seq.*, the CLRA, Cal. Civ. Code §§ 1780, *et seq.*, 15 U.S.C. § 680, *et seq.,* the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, COPPA, 15 U.S.C. §§ 6501-6505, and the CMIA, Cal. Civ. Code § 56.36(b).

189.    T-Mobile's unlawful practices include:

A.      Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and the California Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

B.      Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

C.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the California Subclass Members' Private Information, including duties imposed by the CLRA, Cal. Civ. Code § 1780, et seq., the FTC Act, 15 U.S.C. § 45, 15 U.S.C. § 6801, et seq., HIPAA, 42 U.S.C. § 1320d., COPPA, 15 U.S.C. §§ 6501-6505, and the CMIA, Cal. Civ. Code § 56.36(b), which was a direct and proximate cause of the Data Breach;

D.      Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and the California Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E.      Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the California Subclass Members' Private Information, including duties imposed by the CLRA, Cal. Civ. Code § 1780, et seq., the FTC Act, 15 U.S.C. § 45, 15 U.S.C. § 6801, et seq., HIPAA, 42 U.S.C. § 1320d, COPPA, 15 U.S.C. §§ 6501-6505, and the CMIA, Cal. Civ. Code § 56.36(b);

F.      Failing to timely and adequately notify the Plaintiff and the California Subclass Members of the Data Breach;

COMPLAINT - 35

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

G.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and the California Subclass Members' Private Information; and

H.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the California Subclass Members' Private Information, including duties imposed by the CLRA, Cal. Civ. Code § 1780, et seq., the FTC Act, 15 U.S.C. § 45, the GLBA, 15 U.S.C. § 6801, et seq., HIPAA, 42 U.S.C. § 1320d, COPPA, 15 U.S.C. §§ 6501-6505, and the CMIA, Cal. Civ. Code § 56.36(b).

190.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' Private Information.

191.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and the California Subclass members, into believing that their Private Information was secure.

192.    As a direct and proximate result of T-Mobile's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass members were injured and lost money or property, including monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their Private Information, including but not limited to the diminishment of their present and future property interest in their Private Information and the deprivation of the exclusive use of their Private Information.

193.    T-Mobile acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and California Subclass members' rights.

194.    Plaintiff and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from T-Mobile's unfair, unlawful, and fraudulent business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5;

COMPLAINT - 36

injunctive relief; and other appropriate equitable relief.

### COUNT ELEVEN — VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *ET SEQ.*

195.     Plaintiff Moon ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, incorporates all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of California and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

196.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

197.     T-Mobile is a "person" as defined by Civil Code §§ 1761(c) and 1770, and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

198.     Plaintiff and the California Class are "consumers" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

199.     T-Mobile's acts and practices were intended to and did result in the sales of products and services to Plaintiff and the California Subclass members in violation of Civil Code § 1770, including:

        A.    Representing that goods or services have characteristics that they do not have;

        B.    Representing that goods or services are of a particular standard, quality, or grade when they were not;

        C.    Advertising goods or services with intent not to sell them as advertised; and

        D.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

        E.    T-Mobile violated Civil Code § 1770, in the following ways:

COMPLAINT - 37

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

F.      Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and California Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

G.      Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

H.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d., COPPA, 15 U.S.C. §§ 6501-6505, and the CMIA, Cal. Civ. Code § 56.36(b), which was a direct and proximate cause of the Data Breach;

I.      Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and California Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

J.      Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, COPPA, 15 U.S.C. §§ 6501-6505, and the CMIA, Cal. Civ. Code § 56.36(b);

K.      Failing to timely and adequately notify the Plaintiff and California Subclass members of the Data Breach;

L.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, 15 U.S.C. § 6801, et seq., HIPAA, 42 U.S.C. § 1320d, COPPA, 15 U.S.C. §§ 6501-6505, and the CMIA, Cal. Civ. Code § 56.36(b).

200.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' Private Information.

201.    Had T-Mobile disclosed to Plaintiff and Class members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, T-Mobile was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff, the Class, and the California Subclass. T-Mobile accepted the responsibility of being a steward of this data while keeping the inadequate

COMPLAINT - 38

state of its security controls secret from the public. Accordingly, because T-Mobile held itself out as maintaining a secure platform for Private Information data, Plaintiff, the Class, and the California Subclass members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

202.    As a direct and proximate result of T-Mobile's violations of California Civil Code § 1770, Plaintiff and California Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information, including but not limited to the diminishment of their present and future property interest in their Private Information and the deprivation of the exclusive use of their Private Information.

203.    Plaintiff and the California Subclass seek an order enjoining the acts and practices described above.

**COUNT TWELVE — VIOLATION OF THE
CALIFORNIA CONSUMER PRIVACY ACT,
CAL. CIV. CODE §§ 1798.100, *ET SEQ.***

204.    Plaintiff Moon ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, incorporates all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of California and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

205.    Plaintiff and California Subclass members are residents of California.

206.    T-Mobile is a corporation that is organized or operated for the profit or financial benefit of its shareholders or other owners, with annual gross revenues over $19 billion.

207.    T-Mobile is a business that collects consumers' personal information as defined by Cal. Civ. Code § 1798.140(e). Specifically, T-Mobile obtains, receives, or accesses consumers' personal information when customers sign up for T-Mobile service.

COMPLAINT - 39

208.    T-Mobile is registered as a "data broker" in California, which is defined as a "business that knowingly collects and sells to third parties the personal information of a consumer with whom the business does not have a direct relationship." Cal. Civ. Code § 1798.99.80.

209.    T-Mobile violated Section 1798.150 of the California Consumer Privacy Act by failing to prevent Plaintiff and the California Subclass members' nonencrypted and nonredacted personal information from unauthorized access and exfiltration, theft, or disclosure as a result of T-Mobile's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

210.    T-Mobile knew or should have known that its data security practices were inadequate to secure the California Subclass members' Private Information and that its inadequate data security practices gave rise to the risk of a data breach.

211.    T-Mobile failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the Private Information it collected and stored.

212.    The cybercriminals accessed "nonencrypted and unredacted personal information" as covered by Cal. Civ. Code § 1798.81.5(A)(1)(d), in the Data Breach.

213.    Upon information and belief, Plaintiff and California Subclass members' Private Information accessed by the cybercriminals in the Data Breach includes "nonencrypted and unredacted personal information" as covered by Cal. Civ. Code § 1798.81.5(A)(1)(d).

214.    Plaintiff seeks injunctive relief in the form of an order requiring T-Mobile to employ adequate security practices consistent with law and industry standards to protect the California Subclass members' Private Information, requiring T-Mobile to complete its investigation, and to issue an amended statement giving a detailed explanation that confirms, with reasonable certainty, what categories of data were stolen and accessed without the California Subclass members' authorization, along with an explanation of how the data breach occurred.

215.    Plaintiff and the California Subclass members seek statutory damages or actual damages, whichever is greater, pursuant to Cal. Civil Code § 1798.150(a)(1)(A).

COMPLAINT - 40

216.    As a direct and proximate result of T-Mobile's violations of the Cal. Civ. Code §§ 1798.150, Plaintiff and California Subclass members suffered damages, as described above.

217.    Plaintiff and the California Subclass seek pecuniary damages pursuant to Cal. Civil Code § 1798.150(b).

**C.    Claims Brought on Behalf of the Minnesota Subclass**

**COUNT THIRTEEN — VIOLATION OF THE
MINNESOTA CONSUMER FRAUD ACT,
MINN. STAT. §§ 325F.68, *ET SEQ.* AND MINN. STAT. §§ 8.31, *ET SEQ.***

218.    Plaintiff Hayes ("Plaintiff," for purposes of this Count), individually and on behalf of the Minnesota Subclass, incorporates all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of Minnesota and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

219.    T-Mobile, Plaintiff, and members of the Minnesota Subclass are each a "person" as defined by Minn. Stat. § 325F.68(3).

220.    T-Mobile's goods, services, commodities, and intangibles are "merchandise" as defined by Minn. Stat. § 325F.68(2).

221.    T-Mobile engaged in "sales" as defined by Minn. Stat. § 325F.68(4).

222.    T-Mobile, as the guardian and gatekeeper of Plaintiff's and Minnesota Subclass members' Private Information, had special knowledge of material facts to which Plaintiff and Minnesota Subclass members did not.

223.    These material facts included, inter alia, that T-Mobile's systems and networks were vulnerable to unauthorized access and exfiltration, and therefore, Plaintiff's and Minnesota Subclass members' Private Information was vulnerable to being exposed, exfiltrated, and misused as a result of a Data Breach.

224.    T-Mobile engaged in fraud, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices in connection with the sale of merchandise, in

COMPLAINT - 41

violation of Minn. Stat. § 325F.69(1), including:

> A. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Minnesota Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

> B. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

> C. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Minnesota Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and COPPA, 15 U.S.C. §§ 6501-6505, which was a direct and proximate cause of the Data Breach;

> D. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Minnesota Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

> E. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Minnesota Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and COPPA, 15 U.S.C. §§ 6501-6505;

> F. Failing to timely and adequately notify Plaintiff and Minnesota Subclass members of the Data Breach;

> G. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Minnesota Subclass members' Private Information; and

> H. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Minnesota Subclass members' Private Information, including duties imposed the FTC Act, 15 U.S.C. § 45, and COPPA, 15 U.S.C. §§ 6501-6505.

225. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' Private Information.

226. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and the Minnesota Subclass members, that their Private Information was not exposed and misled Plaintiff and the Minnesota Subclass

COMPLAINT - 42

members into believing they did not need to take actions to secure their identities.

227.    T-Mobile intended to mislead Plaintiff and Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

228.    T-Mobile's fraudulent, misleading, and deceptive practices affected the public interest, including millions of Minnesotans affected by the Data Breach.

229.    As a direct and proximate result of T-Mobile's fraudulent, misleading, and deceptive practices, Plaintiff and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information.

230.    Plaintiff and Minnesota Subclass members seek injunctive relief requiring T-Mobile to adequately protect Plaintiff and Minnesota Subclass members' Private Information from future cyberattacks, and to require that T-Mobile provide Plaintiff and Minnesota Subclass members with sufficient resources to safeguard their identities related to the risks arising from the Data Breach at issue.

231.    Such remedies would provide a public benefit aimed at altering T-Mobile's conduct, protecting Plaintiff's and Minnesota Subclass members' Private Information, and providing resources for continued, future efforts of safeguarding their identities related to the risks arising from the Data Breach at issue.

232.    Plaintiff and Minnesota Subclass members further seek all monetary and non-monetary relief allowed by law, including damages; injunctive or other equitable relief; and attorneys' fees, disbursements, and costs.

### COUNT FOURTEEN — VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT, MINN. STAT. §§ 325D.43, *ET SEQ.*

233.    Plaintiff Hayes ("Plaintiff," for purposes of this Count), individually and on

COMPLAINT - 43

behalf of the Minnesota Subclass, incorporates all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of Minnesota and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

234.    By engaging in deceptive trade practices in the course of its business and vocation, directly or indirectly affecting the people of Minnesota, T-Mobile violated Minn. Stat. § 325D.44, including the following provisions:

> A.    Representing that its goods and services had characteristics, uses, and benefits that they did not have, in violation of Minn. Stat. § 325D.44(1)(5);

> B.    Representing that goods and services are of a particular standard or quality when they are of another, in violation of Minn. Stat. § 325D.44(1)(7);

> C.    Advertising goods and services with intent not to sell them as advertised, in violation of Minn. Stat. § 325D.44(1)(9); and

> D.    Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of Minn. Stat. § 325D.44(1)(13).

235.    T-Mobile's deceptive practices include:

> A.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Minnesota Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

> B.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

> C.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Minnesota Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and COPPA, 15 U.S.C. §§ 6501-6505, which was a direct and proximate cause of the Data Breach;

> D.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Minnesota Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

> E.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Minnesota Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and COPPA, 15 U.S.C. §§ 6501-6505;

COMPLAINT - 44

F.      Failing to timely and adequately notify Plaintiff and the Minnesota Subclass members of the Data Breach;

G.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Minnesota Subclass members' Private Information; and

H.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Minnesota Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and COPPA, 15 U.S.C. §§ 6501-6505.

236.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' Private Information.

237.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and the Minnesota Subclass members, that their Private Information was not exposed and misled Plaintiff and the Minnesota Subclass members into believing they did not need to take actions to secure their identities.

238.    T-Mobile intended to mislead Plaintiff and the Minnesota Subclass members and induce them to rely on its misrepresentations and omissions.

239.    Had T-Mobile disclosed to Plaintiff and Minnesota Subclass members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, T-Mobile was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff and the Minnesota Subclass. T-Mobile accepted the responsibility of being a steward of this data while keeping the inadequate state of its security controls secret from the public. Accordingly, because T-Mobile held itself out as maintaining a secure platform for Private Information data, Plaintiff and the Minnesota Subclass members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

240.    T-Mobile acted intentionally, knowingly, and maliciously to violate Minnesota's

COMPLAINT - 45

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff's and Minnesota Subclass members' rights.

241.    Plaintiff and Minnesota Subclass members are likely to be damaged in the future, given that T-Mobile still maintains their Private Information, continues to adequately safeguard and protect this information from unauthorized access in the future, and therefore has created a likelihood that such information may be exposed during a future data breach.

242.    As a direct and proximate result of T-Mobile's deceptive trade practices, Plaintiff and Minnesota Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information.

243.    Plaintiff and the Minnesota Subclass members seek injunctive relief requiring T-Mobile to adequately protect Plaintiff and the Minnesota Subclass members' Private Information from future cyberattacks, and to require that T-Mobile provide Plaintiff and the Minnesota Subclass members with sufficient resources to safeguard their identities related to the risks arising from the Data Breach at issue.

244.    Such remedies would provide a public benefit aimed at altering T-Mobile's conduct, protecting Plaintiff's and Minnesota Subclass members' Private Information, and providing resources for continued, future efforts of safeguarding their identities related to the risks arising from the Data Breach at issue.

245.    Plaintiff and the Minnesota Subclass members further seek all monetary and non-monetary relief allowed by law, including damages; injunctive or other equitable relief, as well as attorneys' fees, disbursements, and costs.

COMPLAINT - 46

**D.      Claims Brought on Behalf of the Tennessee Subclass**

**COUNT FIFTEEN — VIOLATION OF THE TENNESSEE PERSONAL CONSUMER INFORMATION RELEASE ACT,
TENN. CODE ANN. §§ 47-18-2107, *ET SEQ.***

246.    Plaintiff Garner ("Plaintiff," for purposes of this Count), individually and on behalf of the Tennessee Subclass, incorporates all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of Tennessee and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

247.    T-Mobile is a business that owns or licenses computerized data that includes Personal Information as defined by Tenn. Code Ann. § 47-18-2107(a)(2).

248.    Plaintiff's and Tennessee Subclass members' Private Information include "Personal Information" as covered under Tenn. Code Ann. § 47-18- 2107(a)(3)(A).

249.    T-Mobile is required to accurately notify Plaintiff and Tennessee Subclass members following discovery or notification of a breach of its data security program in which unencrypted Private Information was, or is reasonably believed to have been, acquired by an unauthorized person, in the most expedient time possible and without unreasonable delay under Tenn. Code Ann. § 47-18-2107(b).

250.    Because T-Mobile discovered a breach of its security system in which unencrypted Private Information was, or is reasonably believed to have been, acquired by an unauthorized person, T-Mobile had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Tenn. Code Ann. § 47-18-2107(b).

251.    By failing to disclose the Data Breach in a timely and accurate manner, T-Mobile violated Tenn. Code Ann. § 47-18-2107(b).

252.    As a direct and proximate result of T-Mobile's violations of Tenn. Code Ann. § 47-18-2107(b), Plaintiff and Tennessee Subclass members suffered damages, as described above.

253.    Plaintiff and Tennessee Subclass members seek relief under Tenn. Code Ann. §§

COMPLAINT - 47

47-18-2107(h), 47-18-2104(d), and 47-18-2104(f), including actual damages, injunctive relief, and treble damages.

**E.      Claims Brought on Behalf of the Washington Subclass**

**COUNT SIXTEEN — VIOLATION OF WASHINGTON DATA BREACH NOTICE ACT,
WASH. REV. CODE §§ 19.255.010, *ET SEQ.***

254.    Plaintiffs Avery and Ryan ("Plaintiffs," for purposes of this Count), individually and on behalf of the Washington Subclass, incorporate all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of Washington and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

255.    T-Mobile is a business that owns or licenses computerized data that includes "personal information" as defined by Wash. Rev. Code § 19.255.010(1).

256.    Plaintiffs' and Class Members' Private Information includes "personal information" as covered under Wash. Rev. Code § 19.255.010(5).

257.    T-Mobile is required to accurately notify Plaintiffs and Class Members following discovery or notification of the breach of its data security program if Private Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Private Information was not secured, in the most expedient time possible and without unreasonable delay under Wash. Rev. Code § 19.255.010(1).

258.    Because T-Mobile discovered a breach of its security system in which Private Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Private Information was not secured, T-Mobile had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wash. Rev. Code § 19.255.010(1).

259.    By failing to disclose the Data Breach to Plaintiffs and all Class Members in a timely and accurate manner, T-Mobile violated Wash. Rev. Code § 19.255.010(1).

260.    As a direct and proximate result of T-Mobile's violations of Wash. Rev. Code §

COMPLAINT - 48

19.255.010(1), Plaintiffs and Class Members suffered damages, as described above.

261.    Plaintiffs and Class Members seek relief under Wash. Rev. Code §§ 19.255.040, including actual damages and injunctive relief.

## COUNT SEVENTEEN — VIOLATION OF THE
## WASHINGTON CONSUMER PROTECTION ACT,
## WASH. REV. CODE ANN. §§ 19.86.020, *ET SEQ.*

262.    Plaintiffs Avery and Ryan ("Plaintiffs," for purposes of this Count), individually and on behalf of the Washington Subclass, incorporate all foregoing factual allegations as if fully set forth herein. This claim is brought individually under the laws of Washington and on behalf of all other natural persons whose Private Information was compromised as a result of the Data Breach.

263.    T-Mobile is a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

264.    T-Mobile advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010 (2).

265.    T-Mobile engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, including:

      A.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

      B.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

      C.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

      D.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Class Members' Private Information, including by implementing and maintaining reasonable security measures;

      E.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class

COMPLAINT - 49

Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

F.      Failing to timely and adequately notify Plaintiffs and Class Members of the Data Breach;

G.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Class Members' Private Information; and

H.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

266.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' Private Information.

267.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiffs and the Class Members, that their Private Information was not exposed and misled Plaintiffs and the Class Members into believing they did not need to take actions to secure their identities.

268.    T-Mobile acted intentionally, knowingly, and maliciously to violate Washington's Consumer Protection Act, and recklessly disregarded Plaintiffs' and Class Members' rights.

269.    T-Mobile's conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, including, but not limited to Wash. Rev. Code §§ 19.255.010, et seq. Alternatively, T-Mobile's conduct is injurious to the public interest because it has injured Plaintiff and Class Members, had the capacity to injure persons, and has the capacity to injure other persons, and has the capacity to injure persons. Further, its conduct affected the public interest, including the thousands, if not millions, of Washingtonians affected by the Data Breach.

270.    As a direct and proximate result of T-Mobile's unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-

COMPLAINT - 50

monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Private Information.

271.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## VII.    PRAYER FOR RELIEF

Plaintiffs, on behalf of himself and on behalf of the proposed Class and Subclasses, request that the Court:

a.    Certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Plaintiffs' Counsel as Class Counsel for Plaintiffs to represent the Class;

b.    Find that T-Mobile breached its duty to safeguard and protect the PII of Plaintiffs and Class Members that was compromised in the Data Breach;

c.    Award Plaintiffs and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

d.    Award equitable, injunctive and declaratory relief as may be appropriate;

e.    Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.    Award pre-judgment and post-judgment interest as prescribed by law; and

g.    Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Respectfully submitted,

Dated August 31, 2021

**KELLER ROHRBACK L.L.P.**

**HAGENS BERMAN SOBOL SHAPIRO L.L.P.**

By:    */s/ Juli Farris*
By:    */s/ Gretchen Freeman Cappio*
By:    */s/ Derek Loeser*
By:    */s/ Emma M. Wright*
Cari Campen Laufenberg (WSBA 34354)
Gretchen Freeman Cappio (WSBA 29576)
Derek Loeser (WSBA 24274)
Juli Farris (WSBA 17593)
Emma M. Wright (WSBA 56770)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
claufenberg@kellerrohrback.com
gcappio@kellerrohrback.com
dloeser@kellerrohrback.com
jfarris@kellerrohrback.com
ewright@kellerrohrback.com

Christopher Springer (*pro hac vice* forthcoming)
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel.: (805) 456-1496
Fax: (805) 456-1497
cspringer@kellerrohrback.com

By:    */s/ Thomas E. Loeser*
Thomas E. Loeser (SBN 38701)
Hagens Berman Sobol Shapiro LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
toml@hbsslaw.com

COMPLAINT - 52